UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KARLIER ROBINSON,

    Plaintiff,

v.                              Case No.:

EISMAN & RUSSO, INC,

    Defendant.

_____/

## COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiff, KARLIER ROBINSON, hereby sues Defendant, EISMAN & RUSSO, INC., and alleges:

### NATURE OF THE ACTION

1. This is an action brought under 42 U.S.C. §12101, et seq., the Americans with Disabilities Act of 1990 ("ADA"), as amended, and Chapter 760, Florida Statutes.

2. This is an action involving claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of costs and interests.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, KARLIER ROBINSON, was a resident in the state of Florida, and was employed by Defendant in the Marianna,

Florida. Plaintiff is a member of a protected class due to his disability and was the victim of retaliation .

4.  At all times pertinent hereto, Defendant, EISMAN & RUSSO, INC., has been authorized to conduct business in the state of Florida. For purposes of this action, Defendant is an "employer" as the term is used under the applicable laws identified above.

## CONDITIONS PRECEDENT

5.  Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations. This action is timely brought thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6.  Plaintiff, Karlier Robinson ("Plaintiff" or "Mr. Robinson"), was hired by Defendant, Eisman & Russo, Inc. ("ERI"), in February 2019 in Mexico Beach, Florida before being transferred to Marianna, Florida to serve as a TOLS monitor for the company.

7.  Mr. Robinson sustained a back-injury years before his employment with ERI, resulting in herniated disks and leaving him disabled. Specifically, Mr. Robinson is unable to stand for extended periods of time, walk great distances, or exert himself beyond a certain amount of energy without feeling a great deal of

pain. Since his accident, Mr. Robinson has continuously received treatment for his disability with multiple medical providers.

8. When Mr. Robinson was hired by ERI, he informed his supervisor of his disability. After informing his supervisor, Mr. Robinson was told reassured the company would not place him in certain jobs such as working on a boat and would instead accommodate his disability.

9. In the position as a TOLS monitor, Mr. Robinson monitored work performed by other employees of ERI and was provided a chair, under an umbrella on the job site, as an accommodation to fulfill his job duties. This accommodation was not provided to all other TOLS monitors of ERI and was rightfully provided to Mr. Robinson due to his disability.

10. Approximately one month into his employment, Mr. Robinson was assigned a new supervisor who immediately brought up his disability and expressed to Mr. Robinson that he should not be a TOLS monitor and instead should be reassigned to work on a boat.

11. Mr. Robinson then explained to his supervisor the limitations his disability imposed on him and that the job duties for the TOLS monitor position, with the accommodation of a chair, were within the restrictions of his disability.

12. Despite this conversation, Mr. Robinson was transferred to a new job site, prohibited him from having a chair to sit in while performing his job duties,

and assigned a new position that required him to perform work that was not within the restrictions of his disability. Consequently, there were immediately issues with Mr. Robinson's new position and he conveyed these issues to EIR.

13. Shortly after this reassignment, Mr. Robinson was told to clock-out and leave the job site. Mr. Robinson went to the main on-site office of ERI and was told by Bob Bergenheim that he needed a doctor's note in order to return to his position as a TOLS monitor with the appropriate accommodations. Mr. Robinson informed Mr. Bergenheim that he believed he was being singled out and transferred due to his disability.

14. Mr. Robinson immediately traveled to his doctor's office, got documentation concerning his disability and details of his restrictions, and returned to the job site to give the company this paperwork.

15. Upon returning with the requested paperwork, Mr. Robinson was informed by Mr. Bergenheim that despite the paperwork, Respondent would not be placing him back in his position as a TOLS monitor and that his employment was terminated effective immediately.

### Count I – Disability Discrimination

16. Paragraphs 1-15 are realleged and incorporated herein by reference.

17. This is an action against Defendant for discrimination based upon disability brought under the Americans with Disabilities Act ("ADA") as amended,

and Chapter 760, Florida Statutes. Defendant failed to accommodate a known and perceived disability and denied Plaintiff equal benefits and rights because of his disability.

18. Plaintiff's physical disability impaired and substantially limited one or more major life activities, and Defendant regarded Plaintiff has having such an impairment.

19. Plaintiff was a qualified individual in that he was able to perform the essential functions of his job with reasonable accommodation.

20. Defendant terminated Plaintiff for having an actual disability, as well as a disability perceived by Defendant.

21. Defendant refused to provide Plaintiff an accommodation despite his doctor's note, his personal request, and the fact that he had successful performed the functions of his job when a prior accommodation was made.

22. Defendant is liable for violating the ADA because it controlled the actions and inactions of the individuals making decisions concerning Plaintiff's employment and ratified such conduct. At the time Defendant terminated Plaintiff and failed to accommodate his disabilities, Defendant had actual knowledge of such disability and Plaintiff's request for accommodation.

23. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, lost benefits,

illness, lost wages, and other tangible and intangible damages. The damages are continuing and permanent. Plaintiff is entitled to injunctive/equitable relief, as well as punitive damages.

## Count II – Retaliation

24. Paragraphs 1-15 are realleged and incorporated herein by reference.

25. The foregoing allegations establish a cause of action for retaliation after Plaintiff reported unlawful employment practices adversely affecting him under the ADA and Chapter 760, Florida Statutes. Moreover, the foregoing unlawful actions were purposeful.

26. Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and he was the victim of retaliation thereafter, as related in part above. There is a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

27. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, lost benefits, illness, lost wages, and other tangible and intangible damages. The damages are continuing and permanent. Plaintiff is entitled to injunctive/equitable relief, as well as punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process be issued, and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, and any other equitable relief available to Plaintiff;

(c) order Defendant to institute and carry out policies, practices, and programs that eradicate the effects of its past and present unlawful employment practices;

(d) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant's violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 2nd day of June 2020.

>Respectfully submitted,
>
>/s/ *Matthew D. MacNamara*
>Matthew D. MacNamara (#113002)
>SCOTT & WALLACE, LLP
>209 E. Brevard Street
>Tallahassee, Florida 32301
>Telephone: (850) 222-7777
>Facsimile: (850) 222-7778
>matt@scottandwallacelaw.com
>Attorney for Plaintiff